BEVERLY LAND COMPANY, APPELLEE, v. CITY OF SOUTH SIOUX CITY ET AL., APPELLANTS.

FILED MAY 18, 1928. No. 25980.

*Stout, Rose, Wells & Martin, Sidney T. Frum* and *George W. Leamer,* for appellants.

*W. V. Steuteville, contra.*

Heard before GOSS, C. J., DEAN, GOOD, EBERLY and HOWELL, JJ., and BROADY, District Judge.

BROADY, District Judge.

This is a suit in equity to cancel and enjoin the collection of certain special paving assessments made against the

plaintiff's property in the City of South Sioux City. The questions presented are (1) the validity of the ordinance creating the paving district; (2) the authority of the village board or council to correct the minutes of a previous meeting to show that the "yea" and "nay" votes of the members of the council were taken and recorded and also that the mayor signed the ordinance at the time; (3) if the ordinance was invalid because improperly passed, was the assessment valid and binding under authority of another ordinance? and (4) whether the assessment was invalid because the property involved received no benefit from the improvement. Findings and judgment were in favor of the plaintiff, and the city appeals.

The appellant assigns twelve errors as grounds for reversal, but those above enumerated are the only ones urged at the hearing and necessary to consider.

The validity of other like assessments levied under this same project has been before this court on two previous occasions. *Rooney v. City of South Sioux City*, 111 Neb. 1; *Sioux City Bridge Co. v. City of South Sioux City*, 112 Neb. 271. In both of these cases the assessments were held invalid and void for the reason that the mayor did not sign the ordinance and therefore the ordinance never became operative.

City of South Sioux City is a city of the second class, and began proceedings to pave its principal street, and on March 22, 1920, the city council enacted ordinance No. 121 which provided for the improvement. This ordinance did not make provision for paving between the rails of a street railway track, and on April 17, 1920, the council passed ordinance No. 122 which was a duplicate of No. 121 with an additional section making provision for paving between the street-car rails. The assessments involved in this case were made thereafter and the paving constructed and completed. The plaintiff urges (1) that ordinance No. 122 was not signed by the mayor, as required by statute, and therefore void; (2) that the ordinance was not posted or published as required by law; (3) that the "yea" and "nay"

votes of the members of the council were not called and recorded upon the passage of the ordinance; (4) that the ordinance is void because it is confiscatory, and because the paving district included all the property within the city limits, and also authorizing paving of several different streets; and (5) that the assessments are in excess of benefits to the affected. Several other charges were also directed against the assessments.

The city, by its pleading and evidence, defends the assessment by denying that the mayor did not sign the ordinance, or that the "yea" and "nay" votes of the councilmen were not called and recorded, and further claims that, even if ordinance No. 122 be held invalid, the assessment is valid under authority of ordinance No. 121, and also general authority under the statutes.

Ordinance No. 122 was acted upon by the council on April 17, 1920. The minutes of that meeting do not show that the mayor signed the ordinance, and this court in the two previous cases heretofore mentioned has so held. Subsequent to those decisions, it is claimed by the city that the original ordinance had been lost, but that it had, in fact, been properly signed by the mayor, and on November 1, 1921, after the city had elected a new mayor and part, at least, of the council were of a different personnel, passed a general resolution which in effect stated that the mayor had signed the original ordinance, and that the "yea" and "nay" vote of the councilmen had been taken on April 17, 1920, and proceeded to correct the minutes of the April meeting accordingly. The city offered the oral testimony of the former mayor that he did sign the ordinance, and also of the city engineer, and one or two others, to the effect that they were present and saw the mayor actually sign the original. The city engineer testified that he particularly remembered it because the mayor had borrowed his fountain pen which was then filled with green ink, and that some comment was made at the time of the fact that the mayor was using green ink. The city urged that such oral testimony is admissible to prove the actual facts, and

that such a *nunc pro tunc* order was proper and conclusive.

It is a noticeable condition in this case that all of the proceedings of the council apparently were found in the book of records except this particular ordinance. Also a "yea" and "nay" voting record was made on all other actions taken. It is also a glaring fact that on two previous trials in this court on this same assessment no suggestion was made that the original ordinance had been lost. This situation cannot be overlooked by a reading and study of the record in this case. In the face of that situation, the council on November 1, 1921, eighteen months later, when a new mayor had been elected and in office and at least a large part of the personnel of the council had changed, passed a resolution correcting the minutes of the meeting held eighteen months earlier to state that the mayor did in fact sign the ordinance, and that the "yea" and "nay" vote was taken. The council, or a like body, does have the power to correct its minutes to show the actual facts, if done within a reasonable time. "But such a proceeding is fraught with so much danger that the rule should be administered with caution, the alleged unrecorded proceeding not being held established without clear evidence thereof. The presumption is, where no record of proceedings of a municipal council exists, that none took place. So also * * * where it does not appear on the record whether some mandatory requirement of statute in respect to procedure was or was not complied with, although regularity will be presumed, failure to comply with the statute may be shown by extrinsic evidence." 19 R. C. L. 903, sec. 202. The statutes require the record of a "yea" and "nay" vote of the council. Section 4331, Comp. St. 1922. To permit the record as made at the time to be changed by parol testimony would amount to a judicial repeal of a legislative enactment. *Farmers Telephone Co. v. Town of Washta*, 157 Ia. 447. This very ordinance required, as a condition to its enactment, that the mayor should sign. The record of both requirements should be

so plain that the interested citizens or successors in office could have no doubt of the action taken. It is to prevent just such a condition as we find in this case that the requirement of a complete record is made mandatory by the statutes. The temptation to correct an omission or oversight is not always irresistible, and in matters of this kind the record made at the time should control unless the contrary is self-evident and necessary.

We have carefully read all the evidence upon this subject. While the printed statements of the former mayor himself, and others, is to the effect he did sign, the general circumstances in the record strongly indicate that he was mistaken. The trial court who had the witnesses before it and heard them testify must have felt the same, for it specifically held that the mayor did not sign, and that the *nunc pro tunc* order was not sufficient. We affirm that finding.

It is argued by the city that, in the event the court should hold ordinance No. 122 was invalid and void, the assessment should be upheld upon the theory that ordinance No. 121 would still be operative, and that the assessment would be valid under its authority. The answer to that argument, in our opinion, is this: On September 7, 1920, the city council, as shown by the council's minute books, by motion properly adopted and on which there was a record "yea" and "nay" vote taken of each councilman, authorized the required publication of notice to property owners of a meeting of the council to be held on October 18 for the purpose of levying assessments to pay for improvements, "as set forth in ordinance No. 122 of the ordinances of the City of South Sioux City, Nebraska, and that a notice similar to the one attached hereto, marked exhibit A, be printed," etc. Exhibit A, the notice, provided for in the foregoing motion, contained the usual notice to property owners in the district that on October 8, 1920, at 10 o'clock in the morning, the council would meet, "for the purpose of passing a resolution, as provided by law, fixing the valuation of all lots or parcels of land to be assessed, * * *

as set out in ordinance No. 122 of the ordinances of the City of South Sioux City, Nebraska." This notice further set out proceedings that would be taken "as set out in said ordinance No. 122." Therefore, it cannot be disputed that the notice and all actions of the council pertaining to this particular assessment directed property owners' attention only to ordinance No. 122. If the purpose of requiring publication of a notice to property owners affected means anything, it can be only that such owners should take notice that a public body would proceed under the authority mentioned in the notice, and no other. If the council acts under an illegal authority, which would be the case if the ordinance specified was void for any reason, certainly the property owner could not be bound by some authority not mentioned in the notice as published. The city council or village board cannot be permitted to give a notice to taxpayers that they will proceed under a specified and specific ordinance and afterwards uphold their actions on some other authority. The proceeding must be upheld, if at all, solely on authority of the notice given.

The plaintiff also urged that the assessments were unreasonable and far exceeded the benefits to the property involved, and for that reason invalid. We deem it unnecessary to go into that question, in view of the necessity of disposing of the case on other grounds.

For the reasons above stated, the decree of the district court is

AFFIRMED.